Target case is number 18-14-97, B. Braun Melsungen AG v. Becton, Dickinson and Company Mr. Bernstein Good morning, Your Honor Good morning May I just grab some water, please? Yes, please, of course Thank you May it please the Court, Scott Bernstein for Appellants v. Braun The issue before the Court today is whether the District Court erred in construing the phrase needle-protective device as a means plus function term pursuant to 1126 By way of background, there are seven patents at issue from two families The patents all use the word needle-protective device in the asserted claims And the patents generally relate to catheter insertion devices for inserting a catheter, an IV catheter into the vein of a patient And what was acknowledged at the time was when you withdraw the needle from the patient after insertion, the needle tip could be problematic to the health care workers And so they developed what's called a needle-protective device which was known to persons of skill and the art at the time which would protect the tip of the needle from needle stick injuries And then also a novel valve which would prevent blood from flowing out of the catheter after the needle was withdrawn We contend that needle-protective device was incorrectly construed as 1126 for several reasons First, the limitation doesn't include the word means, and as this Court is well aware when the word means does not appear in a phrase, a presumption occurs that means plus function should not exist And whereas here, there was evidence presented, and we believe substantial evidence presented by persons of skill and the art, and in particular Mr. Meist, our expert as well as prior art that he relied upon and articles that he relied upon we believe that it was a clear error for the Court to conclude We've also said that the word device is a classic nonce word Well, Your Honor And then the question is, does the term needle-protective connote sufficient structure to those skilled in the art? And so, as I understand what happened here is the judge below looked around the specification for understanding as to the meaning of needle-protective device and did not see the term used in the specification and didn't see it defined in the prosecution history And so then everyone had to resort to extrinsic evidence to try to figure out whether this term needle-protective device is a term of art, an established term of art in the field that skilled artisans would look at and understand in their mind that there is some class of structures that relate to this term needle-protective device Your Honor, I agree with you in part and respectfully disagree in part and of course I'll explain I don't agree that device necessarily is a nonce word It can be that the cases have determined that in instances where there's not sufficient support either in the intrinsic record or the extrinsic record, it can be so construed We contend that in this particular instance needle-protective device when viewed as a whole and also in the context of the surrounding language in the claim is not a nonce word and it did connote specific terminology to a person of skill in the art And we relied, and actually the IPRs and we submitted a citation of supplemental authorities just a few weeks ago where three IPR decisions on the same patents ensued construed that same term needle-protective device to not be subject to 112.6 As I understand it, the arguments were a little different and the evidence was also a little different before the board compared to what Judge Andrews had here Well, I understand what happened below There was no argument from your side that any of the claim language helps define what is meant by needle-protective device So let me answer your question and there's several parts to the answer, so if I may The evidence was the same In other words, the intrinsic evidence was the same Mr. Mice testified, our expert, at the district court and also presented expert testimony before the board They presented expert testimony from Mr. Griffith, the same expert that presented testimony both below and at the PTAB Right, but am I wrong in recalling that your side agreed that there wasn't anything in the text of the claims themselves that helped support the idea of what it must mean to be a needle-protective device? So this is going to sound sort of like a lawyer's argument but the answer to your question is we didn't agree that there was not sufficient structure in the surrounding claim language We did agree, though, and admittedly we agreed that we were not presenting that argument to the district court because we felt confident that there was sufficient evidence from a person of skill in the art that they would understand that term to connote a class of structure But, if I may, during questioning on oral argument So in the briefing itself, we acknowledged that we were not making that argument that there was sufficient structure in the surrounding claim language No question about that But then upon questioning from the judge during oral argument we did, in fact, argue that there was structure So the judge, and I'll get to that in just a moment Specifically during oral argument, upon questioning from the judge in several different instances and I'll direct the court to appendix 323 at lines 18 through 20 where counsel indicated, quote We believe we have strong arguments as to why there's sufficient structure as to all three terms Three, I should say And what he's referring to there is there were three terms that were at issue at the district court that were all attempted to be construed by BD as means plus function, though they didn't have the word means in it So what counsel's arguing is needle protective device plus these other two terms were structural And he went on at appendix 325, lines 10 through 22 where he responded to the judge, quote So the issue is simple, your honor Does the term needle protective device refer to structure to one skilled in the art? It does, and this is not means plus function limitation So here's claim 11 Here's a representative claim from the Where's Zerbe's Pet That's one of the two families at issue And we highlighted towards the bottom of the slide the term needle protective device The claims go on to describe where the needle protective device is located It states from the needle tip in the ready position and movable relative to the needle tip at least in part distally of the needle And then further at appendix 326, lines 5 through 10 counsel continued by arguing but it needs to be spaced from the needle tip It needs to be movable relative to the needle tip in the ready position It has to be at least in part distally of the needle tip Those are very specific limitations about this particular needle protective device Why would the result be different? Whether it's means plus function or not In both cases you just look at the spec and there it is Well, Your Honor, we would assert that when you look to the spec under means plus function you're limited to the embodiments and equivalents thereof that are described in the specification There was nothing in the file history as Judge Cheng correctly pointed out that addressed the meaning of needle protective device And so there would be no limitation There's no prosecution history estoppel that would require needle protective device to be limited to just the specific embodiment or embodiments in the specification So why would that result be any different? Well, the result would be different, Your Honor, respectfully because if it is construed as means plus function then it's limited to the embodiments in the specification And equivalents And equivalents, that's right I still don't understand why it would be different Well, Your Honor, Mr. Mice presented several declarations to the district court He was the expert for B. Braun And he indicated that there was a number of different embodiments that a person of skill in the art would understand to fall within the family of needle protective devices And so if you were to construe a needle protective device broadly as the PTAB did, for example You know, the PTAB construed it to be a device configured to prevent unintended needle sticks which is precisely what we contended to the district court the term should mean which would have a broader meaning, you know, we believe than the construction that was ultimately adopted by the court One aspect, I think, of what Judge Newman was just asking you about might be framed this way In the pages you were reading from the transcript where you're pointing, and you now do in your brief a little bit to other claim elements with structural features as supporting the notion that this language needle protective device is it's self-structural It seems to me the other language helps only to the extent that you can say if you treat this language needle protective device as means plus function and just pull in the two different things in the spec that that other language in the claims wouldn't make sense But if it does make sense if all that other structural language makes sense even with the butterfly clip and the other thing The spring clip is what was referred to Then it seems to me the other structural language in the claim doesn't add to the persuasiveness of an argument that needle protective device is itself structural You know, I understand So is there something in these other structures in the other claim language that's sort of incompatible with the spring clip You know, I wouldn't necessarily say, Ron there's anything that's incompatible with the spring clip What I would say is if you limit the claim to spring clip as the BD is certainly attempting to do then that would definitely narrow it more so than the plain and ordinary meaning of the term as we had proposed And I'll give you examples What is that plain and ordinary meaning that you proposed below? Sure, it's a device configured to prevent unintended needle sticks Okay, so that covers anything that prevents needle sticks So, great question, Your Honor And that was something that BD had pointed out They argued in their briefs that, for example, rubber gloves would suffice under that definition But the answer is it doesn't because you have to look at the term in context And so when you look at the term in context you know that it has all these other structural limitations Any component attached to the catheter assembly that can prevent needle sticks? If it met all the other limitations of the claim I would agree with that But I would point out, Your Honor that even BD in its brief I guess that my concern is that's breathtakingly broad and undefined And that's not quite the same thing as an ordinary skilled artisan would imagine a certain set of structures and components that can be a needle protective device Instead, we're looking at it from a different angle which is anything and everything that can serve this function Let me see if I can help, Your Honor Because Mr. Meist supplied an answer to that Mr. Meist identified specific structures that he believed fell within the category of needle protective device That's paragraph 90 of his declaration in appendix 1943 to 1944 And in it he identified protective shields retractable needles among other structures that would fall within the class of needle protective devices And Judge Shen, just to point out and to further amplify the answer BD also admitted in its brief This is not a question here a legitimate question about what falls within this category because these were devices or structures that were known  in its district court claim construction brief I'll direct the court respectfully to page 1690 of the appendix that there was a quote wealth of prior art teaching almost limitless configurations for protecting health care workers from accidental needle sticks and then they listed the types including caps, needle guards and retracting needles So this isn't really as broad as one may suspect because persons of skill in the art understood what was referred to And Your Honor But I guess that then there's a nexus question which is your term that you appear to have coined needle protective device Why should we conclude that it encompasses anything and everything that can serve this function Just the fact that there were a number of I'll just call them safety mechanisms in a generic way that could protect against needle sticks Why do we have to read or find that Judge Andrews clearly erred in concluding that needle protective device wasn't so established as a coined term to skilled artisans that it means anything and everything that prevents needle sticks Sure Well in addition to Mr. Meist's two declarations he also relied upon articles and prior art references and specifically You're talking about the British Journal The 508 patent was what I was going to feature first and then also the British Journal Well your briefing below didn't really feature the 508 patent It featured the British Journal Actually it featured both Your Honor I'll direct the court You're talking about the string site to the 508 What I'm referring to and if you give me a moment Your Honor I'll get to it So B. Braun cited the 508 patent in its claim construction briefing that was at the joint claim construction brief at appendix 1753 through 1754 and then they also featured it during the oral argument at the Markman hearing and that was at page 28 lines 1 through 12 So when I look at your joint brief I see the I see one citation in a string site at the back of a string site at page 1754 to the 508 patent Understood And Is there anything else? In the briefing In the briefing I don't believe so No Your Honor Okay And then during Featured is a strong word Reference Forgive me I wasn't trying to overstate It's referenced Okay Thank you Your Honor And then Why would the language in that patent help establish that the meaning of that phrase is something other than what the than the meaning of a phrase a device for protecting against needles That is if you have a patent and you title it needle protective device it seems to me you haven't yet told the world that it is a name of a thing as opposed to a name of a class defined only functionally Sure Understood Your Honor So for example in the 508 patent it actually recited that various protective devices of this kind meaning needle protective devices are known But why does that help? Well Right The universe the class of devices that serve the function will of course have members Sure I think this is exemplary that there was a term that was known needle protective device Did your expert by the way ever say here are a bunch of things that serve the function that are needle protective devices and here are a bunch of things or at least one thing that serves the function that isn't a needle protective device Because if you don't do that then it seems to me the phrase is you can't tell whether the phrase is simply referring to a purely functionally defined class Sure So I believe the answer to your question is he did in paragraph 90 of his declaration at page 1944 of the appendix identify structures that fell within the class Right What about the ones out? Yeah I don't believe Yeah I don't believe Judge Taranto that he actually said here are examples that are not within the class in fairness But I would also point out and Judge Chaney referenced the 2003 British Journal of Nursing article So that article and they have raised the point that it's not prior art to all seven patents in suit That is correct It was prior art to the second family of patents not the earlier family of patents However both parties acknowledge that the term needle protective device should have the same construction across both families and as this court is aware even if a later in time reference it can be relied upon to show what the state of the art was earlier in time And that's what we contend the British Journal Journal of Nursing article does vis-a-vis the earlier family And the reason why that article we believe is helpful is because it specifically references a definition for needle protective device And in it it defines needle protective device as any product that can be used to protect healthcare workers from accidental needle stick or sharps injuries Other sharps injuries But in terms of the weight of that evidence for the proposition that I think you have to establish it seems to me when it says an NPR is defined as it is not necessarily saying the world of the relevant technology here understands the word to mean this It could just as easily and maybe even slightly more naturally be understood to be kind of acknowledging this is not a term the readership knows And we're now going to write something And as a shorthand we are going to define this term Which it seems to me doesn't tell you very much about relevant understanding in the usage of the skilled artisan community I understand your comment Your Honor And you do have to get to the level of saying Judge Andrew's factual finding about usage is clearly erroneous So a little bit of evidence wouldn't seem to meet that Well Your Honor we suggest we supplied evidence both in the form of the expert declarations Of course it doesn't matter what I think It matters what a person of skill in the art thinks And in this case we did supply multiple declarations which were credited by the way by the PTAB when considering the exact same term The other thing I would point out is putting aside Actually before I even get to the argument about the surrounding claim language if I still have time I did want to point out that there were at least two clearly erroneous findings that we believe the District Court made One was the District Court concluded that the prior art and articles referenced by Mr. Meis and relied upon by Braun post date the filing date of some or all of the patents at issue And again we point to the 508 patent which preceded all seven patents at issue by several years and also to the British Journal of Nursing article which at least is prior art to one of the two families Let's hear from the other side and we'll save some rebuttal time Thank you Your Honor May it please the Court Thank you Your Honor and along with Bill Lee, Bill McElwain and Jeff Dennard I represent BD in this appeal Braun at the District Court presented only a single factual issue to the District Court and that was whether the needle protected device term had a commonly understood established meaning in the art The District Court found that it did not and that conclusion was correct and certainly was not clearly erroneous On appeal now for the first time Braun is presenting effectively a new case and is asking this Court to make factual findings that it did not ask of the District Court to make We think those requests for new factual findings are waived but even if the Court were to consider them the record evidence doesn't support those findings certainly doesn't support the broad and incredibly expansive functional meaning that Braun wants to put forward and have in the Court What's important for the District Court's conclusion is the context of what the Court was looking at in the record So the record was as I think my friend on the other side acknowledged was voluminous There was two rounds of summary judgment briefing, three expert declarations the Court heard oral argument The evidence for the Court was that people in the industry and the field have been discussing mechanisms for needle stick prevention since the early 1980s So there was a body of 40 years of literature that had been developed and presumably Braun canvassed that literature as we did we and out of that entire literature the parties put before the District Court 70 references in connection with all of the claim construction disputes before the Court With respect to the needle protective device limitation specifically Braun put forward before the Court eight references Of all the 40 years of literature of the 70 references before the District Court only two references used the term at all And both of those references used the term inconsistently with each other and with the claims In light of the fact that there were no dictionaries, treatises, textbooks, in light of the fact that there's nothing in the intrinsic record the District Court cannot be found to have committed clear error in weighing those two references as a noun for established meaning The What if hypothetically this is a hypothetical the specification said something different What if it said over the past number of decades there's been a lot of research and development on mechanisms safety mechanisms that can help protect against needle sticks and I'm going to coin a term and I call it needle protective device and by coining that term I am referencing all known ways of protecting against needle sticks There could be a spring means that shoots out and covers the end point of the needle There could be automatic retracting schemes to withdraw the needle back into the housing There can be some other things too Some shield elements of some kind And when I say needle protective device I'm referring to all of them And then in the claim I go ahead and say catheter assembly having this that a valve and a needle protective device Would that kind of a claim term in the context of that specification cover any and all known ways of protecting against needle sticks up until the time of the filing date? That case is fundamentally different in two ways and the answer Just asking your question about my fact Right so in that very specific fact situation First of all needle protective device we contend would be a means plus function term subject to 112.6 And then there would have to be an inquiry into what the corresponding structures are that correspond to the now coined term needle protective device And if the disclosure  specification corresponded to and had the requisite nexus to the coined term then Braun would be able to establish that the needle protective device was focused on the disclosure And here the disclosure is completely different because that's not the invention. So the invention here is the combination of the specific spring clip with their specific valve. That's why the specification in this case doesn't talk about all the other shields and guards and caps and recess needles and all the other things in the art that were known because the invention is highly specific and directed to the specific combination of the spring clip with their specific blood control valve. My colleague referred to the 508 patent and on the 508 patent again context is incredibly important. On the 508 patent they put eight references before the district court on the needle protection device limitation and the 508 patent appears only in a string citation in Ron's reply brief. So it doesn't appear in the opening brief it appears in the reply brief and it's in a string citation and their expert Dr. Meist also did not have the 508 patent in his opening declaration it was in the rebuttal declaration. So what does he say about the needle protective device in the rebuttal declaration? He says I found a patent having the title needle protective device. That's it. He doesn't say anything else and that's at 2642 he doesn't say anything else about the 508 patent other than he found a patent that has a title. On that and then at the argument there was four lines of oral argument at A333 about the 508 patent which was a throw away to the district court. The district court on that record was not obligated to discuss it. It certainly considered it and rejected it and appropriately rejected it but I think the fault that the district court and judge Andrews for not addressing it is misplaced. With respect to the British nursing article it is not authoritative for multiple reasons. For the fact that it states a definition that's coined for that particular article alone. It does not purport to be stating an established meaning in the art. And of course it's inconsistent with the claim and the use of the term in the claim. So that's important for at least two reasons. The first being that the inquiry is about whether the term in the claim is means plus function and what the term in the claim means. It's inconsistent because the definition in the British nursing article is a safety feature or safety mechanism. So the      only because we have to determine whether the term in the claim is means plus function and what the term in the claim is.  we have to determine what the claim term means in the claim but it also goes to show that there was no common understanding or established meaning that it was a coined term in both instances. With respect to the needle guard arguments I won't address them at this point but they are clearly erred on this record when the term needle guard is not in the claim at all. The only expert testimony on the term needle guard is from BD's expert and BD's expert testified that the term needle guard has idiosyncratic functional and coined meanings in both instances and we contend that the record evidence that they put before you is internally inconsistent. In some the district court cannot have clearly erred if when in the 40 years of literature and the nearly 70 references that the parties put before the court there were only two non-authoritative references that even used the term and they used the term inconsistently with each other and with the claims. If there are no more questions I will cede the rest of my time. Mr. Bornstein you have a little time for questions.  will ask the question of law. I will cite the Zero Click versus Apple case regarding questions of claim construction including whether claim language invokes 35 section 126 the district court's determinations based on evidence intrinsic to the patent as well as its ultimate  of the patent claims are legal questions which you reviewed de novo. And when you look to the actual language of the claims you    there are a number of different claims. And I'll give you as an example claim one of the 249 patent which is appendix 173 just as by way of example. And admittedly each of the 14 claims that are presently asserted that include the needle protective device limitation all have different types of structure. But the 249 patent claim one describes a needle protective device that is spring loaded in a ready to use position. So it requires that the needle protective device is spring loaded in a ready to use position approximately of the valve and at least in part around the needle to prevent unintended contact with the valve.   249 patent    needle  device that is spring loaded in a ready to use position approximately around the needle to prevent unintended contact with the valve. So the 249 patent needle protective 249 patent needle protective device that